THE PEOPLE ex rel. THE BANK OF NEW YORK, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF NEW YORK.

*United States Securities—Legal Tender Notes not exempt from Local Taxes.*

Legal tender notes, issued under the Act of Congress of February 25, 1862, are not exempt from State or municipal taxation.

*Wheeler H. Peckham* for Appellants.
*R. O'Gorman* for Respondents.

Hunt, J.—This case presents the same general questions as are involved in the case of the Broadway National Bank.

My opinion in that case examines the question fully, and I refer to it as expressive of my views of this case.

I have there endeavored to show that a Congressional declaration of exemption is of no effect; that it is the Constitution, and not the law, which gives the exemption.

I have endeavored also to show that certificates of indebtedness are not within the spirit of any of the decisions exempting public loans from taxation.

Upon the same principles I am of the opinion that legal tender notes are not exempt from State taxation; that they are not loans to the United States, and that there is no declaration of Congress requiring their exemption.

They are in no sense loans or the representatives of loans. They are currency—the medium by which purchases are made, or debts are paid, involving no idea of borrowing or lending.

If A buys of B a house or a horse, and pays him the price thereof in bank-notes, is there any view in which A can thereby be made a borrower of B? The government occupies simply the position of a payer, or of a purchaser, with reference to these notes.

Legal tender notes are money, expressly declared to be "lawful money and a legal tender in payment of all debts, public and

private," except duties on imports, and are to be "reissued from time to time as the exigencies of the public interests shall require." They are to all intents and purposes "money" in the hands of banks and individuals.

They are neither loans to the government, nor are they its instrumentalities necessary for carrying on its affairs. After they are issued by the government they are the circulating medium of the country, used by individuals, in and for the ordinary transaction of their affairs, as private property, and with no reference to the wants or the conveniences of the government.

The government issues eagles, half-eagles, and dollars, as well as legal tender notes, and for the same purposes. It is indispensable to the carrying on the affairs of government that it should possess the power to coin and to issue this money ; but no one will contend that it is exempt from taxation, after it has reached the hands of individuals, or that when it has entered into the circulation of the country it is to be regarded as an agency of the Federal government. The principle is the same, as to the paper money issued by it.

Nothing can be more unreasonable or impracticable than the idea of exempting money thus in circulation from State or municipal taxation.

Nor do I find any express declaration of Congress that these legal tender notes shall be exempt from taxation.

In giving an interpretation to the language of these acts, it is to be borne in mind that there are many kinds of obligations to which the language may be applied.

There are coupon and registered bonds, authorized by numerous acts. There are treasury notes, payable three years from date, bearing an interest of seven and three-tenths per centum per annum ; and treasury notes not bearing interest, but payable on demand, at the Assistant Treasurer's office in New York, Boston, or Philadelphia (not being legal tenders); and treasury notes payable in one year, bearing an interest of three and sixty-five-hundredths per centum, and certificates of indebtedness, and compound interest notes, payable with six per cent. interest. We thus have

bonds or stocks, technically so called, certificates of indebtedness, treasury notes at different times, and different rates of interest, and United States demand notes, in addition to legal tenders.

In various acts, passed since 1862, authorizing the issue of bonds, it is expressly declared that the bonds shall be exempt from taxation.

So when treasury notes are authorized, they are expressly declared to be so exempt; but in the act authorizing the issue of legal tender notes (Feb. 25, 1862), the words do not seem to be intended to embrace their exemption. The first section of the act authorized the issue of $150,000,000 of treasury notes, of a denomination of not less than five dollars each, which it declared should be legal tender in payment of debts, and should in substance be the money of the United States.

If these notes had been intended to be exempted, the section in which they were authorized would have been the natural place in which to look for the declaration to that effect. We do not find it there.

The next section authorizes the emission of $500,000,000 of six per cent. bonds, for the avowed purpose of funding the treasury notes and floating debt of the United States.

These bonds the Secretary is authorized to dispose of at their market value; and in the same sentence, delayed only by a semicolon, is the statement that all stocks, bonds, and other securities of the United States shall be exempt from taxation.

I think the fair construction of this exemption would limit it to the bonds and stocks in that section referred to, or at the most that the " other securities " intended to embrace other like securities, or other bonds and stocks by other acts authorized to be issued. This view is strengthened by the fact that in all the other acts, as I have before stated, the notes intended to be exempted are referred to, and exempt by name.

The same construction may be given to the act of June 30, 1864, which is the only other act containing general words of exemption.

By that act the Secretary was authorized to borrow $400,000,000

upon the credit of the United States, and to issue bonds therefor, and to issue $200,000,000 of treasury notes, both of said securities bearing interest and payable at a future day ; and it was enacted that " all bonds, treasury notes, and other obligations of the United States shall be exempt from taxation." This also, in my judgment, should be limited to the subject-matter of the act, to wit, bonds and treasury notes, or at the most to the other bonds and treasury notes of the various kinds I have mentioned, which might be deemed " other obligations " of a like character.

If it had been intended to exempt legal tender notes, apt words to describe them would have been used, or the notes in the act referred to would have been specified.

It is inconceivable that Congress should have continued to repeat and reiterate this exemption on six different occasions, if the acts of February 25, 1862, and of June 30th, 1864, were intended to embrace all the securities or obligations of the United States in all imaginable forms.

In my opinion such legal tender notes are not exempt from State taxation.

There may be a distinction as to the statutory declaration, in reference to the small quantity of notes issued under the act of March, 1863.

The language is there more specific than in the act of February, 1862. It does not appear that any of the notes in question were issued under that act. It would not affect the general principle of non-exemption which I have discussed if it had so appeared.

The judgment of the General Term should be affirmed.

GROVER, J.—The question in the present case is whether the notes of the United States Government, declared by Act of Congress a lawful tender in payment of all private debts, and thus, if the act be valid, made money to all intents and purposes, are liable to State taxation in common with the other property of its citizens.

In the Metropolitan Bank against Van Dyck the act was held constitutional by a majority of this Court, and, consequently, valid.

However erroneous this decision may be regarded, and although the reasoning upon which it was founded entirely fail to satisfy the mind of its soundness, yet it has been acquiesced in and acted upon as a correct exposition of the power of Congress, and, as a consequence, these notes have become almost all the lawful money in circulation, and were so at the time the taxes in question were imposed.

It must therefore be held, for the purposes of this case, that such notes are lawful money to all intents and purposes.

The question comes to this Court, whether the money of the country, however so made, is exempt from taxation by the States, by the Constitution of the United States, or has been exempted by act of Congress.   As an original question there could scarcely be a doubt entertained upon either proposition.   I think no clause or provision of the Constitution can be found that by any possible construction gives the slightest color to the idea that the money of the United States, belonging to a citizen of the State, cannot be taxed by the State in common with the other property of the citizens of the State.

No such clause or provision is pointed out, or even suggested, in the able argument of the counsel for the Appellant.

None such has ever been suggested by any jurist, or commentator upon the Constitution.

Money has been taxed in common with other property by the States, ever since the organization of the government; and the right so to tax has never been questioned, until the introduction of the particular kind of money in question.

It may, therefore, be assumed as a clear proposition, that the State has a perfect right to tax money.   But it is insisted that, notwithstanding these notes are lawful money, and as such liable to taxation, they are also evidences of debt owing by the government, and as such exempt, the same as the bonds of the government, or the stocks of the government, evidenced in any way whatever.

It is perhaps a sufficient answer to this position that the exemption is claimed by the Appellant, and that the onus is upon him

to show that the notes possess no quality subjecting them to State taxation.    If they possess any quality rendering them liable, such liability is not discharged by showing that they possess some others that do not so render them.    They are taxable as money, under the Constitution, so long as they possess this quality, and whether they are as notes of the government it is not material to inquire; should they be held not taxable as notes, they become taxable as money, when this quality is superadded.

. A law exempting almost the entire mass of the money of the country from all obligation to contribute to the support of the State government, by which it is provided almost exclusively, would be anomalous indeed.

The idea that they were creating such exemption never occurred to the framers of the Constitution, or to those who adopted it, or some trace of such an idea would be found in the discussions growing out of these transactions.

It is claimed by the counsel of the Appellant, that, although not exempt by the Constitution, they are made so by act of Congress.

Before examining the acts cited from which such exemption is claimed, it is proper to inquire whether Congress has any power, under the Constitution, to exempt any property of a citizen of a State from taxation, in common with the property of the other citizens of the State, to support the State government.

This power, if it exists, is one of vast importance to the States, as is shown by the present case, and should be found either among the express powers delegated, or clearly implied from some of those powers.

The right of taxation by the States, of the property of their citizens, is one essential to their existence, and such right would never have been delegated to any other government, or subjected to its control, without the greatest necessity therefor.

No such delegation is found among the express powers.    If to be implied from any such, it is the power to borrow money on the credit of the United States.

How this power to borrow money confers any power upon

Congress to interfere with the taxing powers of the State, it is difficult to discover. This, like all the other delegated powers, is supreme, and no State has any power to interpose any obstacle to its free exercise ; and any act of a State creating such obstacle would be void.

This would render void all schemes of taxation discriminating against loans of or to the government, as such schemes would clearly tend to embarrass the free exercise of the power to borrow money. Such schemes would be held void, and thus defeated by the Judiciary.

There is no necessity for the intervention of Congress in such cases. But taxing loans to the government at the same rate of loans to the State or other loans—in short, at the same rate that all other property is taxed—has no such tendency. This leaves the Federal Government free and unobstructed access to the money markets of the State for the purpose of borrowing, and the grant of power does not contemplate anything more than this. It is true that exemption from taxation by the States will enable the government to borrow money upon more favorable terms, but this is no argument in support of a power in Congress to exempt the loan from taxation, any more than of a power to prohibit States, corporations, and individuals from competing with the government when the latter wishes to borrow, or exercising the power of determining the rate of interest that others may pay, so as to enable the government to borrow at a legal rate of interest.

It is not enough to warrant the assumption of an implied power by Congress, to show that such power would in some way incidentally aid in the execution of an express power, when the power implied includes matters clearly beyond the control of Congress, except for such incidental aid. Otherwise the power of Congress would only be limited by the express prohibitions found in the Constitution, and the idea that their legislation, to be valid, must be based upon the expressly delegated powers, or upon such implied powers as are necessary and proper to a full execution of the express powers, has no practical force.

There can be no act passed by Congress, of which it may not be shown that in some way it would the better enable the government to execute some express power. The General Government must borrow money upon its own credit, and at its own expense. It has no power to borrow upon the credit or at the expense of the State governments, and, consequently, has no right to reduce the interest upon its loan by depriving the States of their power of taxation.

This power of the States rests upon a firmer basis than that of contract entered into by the General Government. The argument that Congress may exempt its loans from State taxation, because it could thereby borrow money upon better terms, carried to its full extent, would authorize it to exempt from like taxation all products and commodities the government may require in its service, either in peace or war, and all capital employed in such production, for the reason that government could thereby procure such articles more readily, and at less cost, and thereby be the better able to carry on war. All such reasoning is fallacious, and although, in certain conditions of the country, some patriotic and able minds have partially yielded it their assent, yet a thorough, calm examination will show its results equally disastrous, ending in a consolidation of all power in the Federal Government; as the opposite extreme, ending in State secession. My conclusion is that Congress has no power to pass a law exempting any property from its liability to State taxation.

It is therefore unnecessary to determine whether the notes or bills come within any of the acts declaring such exemption.

I am aware that the Federal Supreme Court, in Weston *v.* The City of Charleston, decided that the stocks of the United States are, by the Constitution, exempt from State taxation; that the same doctrine was again affirmed by the same Court in Bank of Commerce *v.* The Tax Commissioners (2 Black, 620). The reason assigned was, that if such stock was liable to taxation under State authority, it would be in effect a tax upon the credit of the United States, and that the States could by taxation impair or destroy the power of the government to borrow money.

If the reasons are sound, the conclusion is manifestly correct. But are they sound? As to the first, it is not a tax upon the property of the citizen, which consists of a debt due from the government. It is this property that is taxed, not government credit. Where debts due from individuals are taxed, it is the property of the creditor, not the credit of the debtors, that is taxed. Credit is never the object of taxation, but property is. Liability to State taxation does not destroy or impair the power of borrowing, as is abundantly shown by the vast amounts borrowed by States, corporations, and individuals, subject to such liability.

The Federal Government itself imposes a tax upon incomes exceeding a given amount, and collects, unchallenged, this tax from the income derived from State offices. This is undoubtedly within the powers of Congress.

The tax is not imposed upon the officer, but upon the property, irrespective of the sources from which it is derived. This tax upon income derived from the salary or fees of State officers should be clearly illegal, if the grounds upon which Weston *v.* Charleston was decided are sound. States clearly have the right to compensate their officers, and a Federal tax imposed upon such compensation is just as much a tax upon this right of the State, as a State tax upon a debt owing by the General Government is a tax upon its credit; and the power of the State to appoint officers is as much impaired by this exercise of Federal taxation as the power to borrow is by State taxation. But the principles of that decision are not sound. Both the Federal and State Governments have the power of taxation, and may exercise it concurrently, and neither can constitutionally interfere with the right of the other. As the powers of the Federal Government are supreme and paramount, it follows that in case the concurrent powers of taxation of the Federal and State Governments collide, the latter must yield, but in no other respect can the Federal Government interfere with the taxing powers of the States.

This question being one of construction of the Federal Constitution, the Supreme Court of the Union has jurisdiction, and, when

it is decided by that Court, all other Courts must yield obedience to its decision, whatever the views as to its correctness may be; but, where the subordinate Court is of the opinion that such decision is erroneous, it is not their duty to follow it, except as to the precise points adjudged. As to the entire class of debts of the General Government which the Supreme Court have decided were exempt from State taxation, it is the duty of this Court to hold exempt; as to any other class not so adjudged by the Federal Supreme Court, it is the duty of this Court to decide according to its own convictions, and not pronounce any property exempt, unless its own views of the law brings it to that conclusion.

It will be seen that, according to my views, the powers of taxation of both governments must be exercised equally upon all property; that a discriminating tax imposed by either government to embarrass the other in the exercise of its powers would be unconstitutional and void.

As an instance of such an exercise of the taxing power, reference need only be made to the tax imposed by the Federal Government upon bank-note circulation, where one per cent. tax is imposed upon those issued by national banks, and eleven per cent. upon those of State banks.

This presents a palpable case of an attempt by the Federal Government to destroy banking under State authority by the exercise of the taxing power.

If this can be upheld, there is nothing that may not be destroyed by a similar exercise of the taxing power.

If this be valid, it follows that neither government can tax any revenue derived from any operation of the other government, for the reason that the tax might be carried to an extent entirely prohibitory.

But when equality of taxation is adhered to, such a result can never follow until all property is destroyed.

The judgment appealed from should be affirmed.

All concur.

JOEL TIFFANY,
State Reporter.